CARL LINDGREN ET AL., APPELLEES, V. SCHOOL DISTRICT OF BRIDGEPORT ET AL., APPELLANTS, IMPLEADED WITH EMMA B. HOPPEL ET AL., APPELLEES.

102 N. W. 2d 599

Filed April 15, 1960. No. 34740.

*James L. Macken,* for appellants.

*Wright, Simmons & Harris,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit by a landowner and his wife to enjoin the defendants from giving effect to an order of the county superintendent of schools detaching certain lands of plaintiffs from School District No. 50 and annexing such lands to the School District of the city of Bridgeport. The trial court held the proceedings void and granted injunctive relief. The School District of the city of Bridgeport and the members of its board of education have appealed.

The School District of the city of Bridgeport is a

Class III district which we shall hereafter refer to as the Bridgeport district. School District No. 50 is a Class I district which we shall refer to as District 50. The remaining defendants are the members of the board of education of the Bridgeport district, the county superintendent, county clerk, county treasurer, and county assessor of Morrill County, the members of the school board of District 50, and the petitioning legal voters of that district.

The plaintiffs have filed a motion to dismiss the present appeal on the ground that appellants have accepted the judgment of the district court in the present suit by refusing to permit Robert Lindgren, the son of plaintiffs, to attend the high school in the Bridgeport district. The record shows the following: The final decree of the district court in the instant case was rendered on August 20, 1959, and an appeal taken therefrom as hereinbefore stated. On August 29, 1959, the board of the Bridgeport district refused to permit Robert Lindgren to attend the Bridgeport high school. Plaintiffs sought a writ of mandamus against the Bridgeport district to compel it to admit Robert Lindgren to its high school. The Bridgeport district successfully defended the action and a writ of mandamus was denied. No appeal was taken from this judgment. The motion to dismiss is without merit. We point out that a high school district is authorized by statute to refuse admission to any or all nonresident pupils. § 79-4,100, R. R. S. 1943. We point out further that the application of Robert Lindgren to attend Bridgeport high school was tendered on the basis of his being a nonresident pupil which the Bridgeport district board could accept or reject as a matter of discretion under section 79-4,100, R. R. S. 1943. The rejection of the application under this authority cannot be considered an acceptance of the decree in the instant case. It seems to us that if the Bridgeport district had accepted the application of Robert Lindgren as a nonresident pupil,

it would then have taken a position contrary to its position in the instant case that plaintiffs' lands were properly annexed and that plaintiffs thereby became residents of the Bridgeport district. In any event, the situation is such that it cannot be asserted as an estoppel against the Bridgeport district or its school board members to prosecute an appeal, or amount to an acceptance of the decree requiring a dismissal of the appeal.

The plaintiffs contend that there is no proper bill of exceptions in this court and that the only question to be determined is whether or not the pleadings sustain the judgment. As heretofore stated, the decree in this case was rendered on August 20, 1959. No motion for a new trial was filed. The appealing defendants ordered a bill of exceptions within time. Before the bill of exceptions was prepared, and on September 28, 1959, a new statute became effective which authorized this court to prescribe rules for obtaining a bill of exceptions. Such rules were prescribed and they became effective at the same time as the new statute. Admittedly, the procedure followed in procuring a bill of exceptions after September 28, 1959, was in accordance with the new statute and the rules of this court authorized thereby. The plaintiffs assert that the statute in force when the decree was rendered must be followed.

We point out that the new statute, section 25-1140, R. S. Supp., 1959, contains no saving clause. It is urged that the general saving statute, section 49-301, R. R. S. 1943, keeps the old procedure in effect. This contention is without merit. In Lovelace v. Boatsman, 113 Neb. 145, 202 N. W. 418, this court said: "A litigant has no vested right in the mode of procedure, and an action commenced before an enactment changing the procedure in the court where the action is pending, after the enactment becomes effective, is properly triable under the changed method." See, also, Norris v. Tower, 102 Neb. 434, 167 N. W. 728; Department of Banking

v. Hedges, 136 Neb. 382, 286 N. W. 277; Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N. W. 2d 533. The general saving clause found in section 49-301, R. R. S. 1943, providing that the repeal of a statute shall in no manner affect pending actions founded thereon, nor causes of action not in suit that accrued prior to any such repeal, does not save to a party the procedures of the repealed law. The general saving statute relates to substantive and not procedural law. Lovelace v. Boatsman, *supra;* Ensley v. State, 4 Okl. Cr. 49, 109 P. 250; Wheelock v. Myers, 64 Kan. 47, 67 P. 632.

Plaintiffs rely primarily on Cozad v. McKeone, 149 Neb. 833, 32 N. W. 2d 760. That case is clearly not applicable. The final order appealed from in that case was rendered at a date subsequent to the effective date of the amendatory statute. We held that the procedures of the new statute applied to the appeal from such a final order and that a bill of exceptions should have been procured under the law in effect when the final order was rendered. The case has no application to a state of facts such as we have in the present case. The bill of exceptions was properly procured and is here for consideration by the court.

Plaintiffs further contend that no motion for a new trial having been filed the only question before the court is the sufficiency of the pleadings to sustain the judgment. Such is not the law. It has been the consistent holding of this court that in an equity action a motion for a new trial is required to secure a review of rulings of the trial court on alleged errors occurring at the trial, such as rulings on the rejection or reception of evidence. It is required for no other purpose. See, Timmerman v. Timmerman, 163 Neb. 704, 81 N. W. 2d 135; Rush v. Heinisch, 157 Neb. 545, 60 N. W. 2d 608; Nemetz v. Nemetz, 147 Neb. 187, 22 N. W. 2d 619.

Prior to February 6, 1958, plaintiffs were the owners of certain described lands in District 50. On or before that date a petition was circulated among the voters of

District 50 seeking to detach certain lands, including those of plaintiffs, from District 50 and to annex such lands to the Bridgeport district. A sworn list of all the voters in District 50 was attached to such petition. The petition contained signatures in excess of 55 percent of all the voters of District 50. On February 13, 1958, the board of the Bridgeport district accepted the lands described in the petition, and on March 31, 1958, it filed its petition with the county superintendent for a change in the boundary of its district by including the lands described in the petition circulated among the voters of District 50. The petition signed by the voters of District 50 was submitted to the county committee for school district reorganization on February 11, 1958, and was submitted by that committee to the state committee on the same date. The proposal was reviewed by both committees. The county committee, after a published notice of the meeting, held a public hearing. Ten days thereafter the petitions were filed with the county superintendent who, after publishing a notice of hearing, held a hearing to determine the validity and sufficiency of the petitions. Following such hearing the county superintendent on April 15, 1958, made an order by noting the following on the back of the petitions as follows: "Date Granted, April 15, 1958. Date Entered In The Record April 15, 1958. Emma B. Hoppel, County Superintendent of Schools." No proceeding was had to review the order made by the county superintendent.

The plaintiffs contend that the order of the county superintendent was insufficient and void in not meeting the requirements of section 79-402, R. R. S. 1943, which provides in part: "The county superintendent shall then advertise and hold a hearing to determine the validity and sufficiency of the petitions. Upon determination, as a result of the hearing, that valid signatures of at least fifty-five percent of the qualified legal voters of each district are contained in the respective peti-

tions, the county superintendent shall proceed to effect the changes in district boundary lines as set forth in the petitions. * * * Provided, changes affecting cities, villages, or Class III school districts may be made upon the petition of the school board or the board of education of the district or districts affected; * * *."

The defendants maintaining this appeal contend that the granting of the petition by the county superintendent in the manner that she did is valid and binding. We agree that it is. In State ex rel. Tanner v. Warrick, 106 Neb. 750, 184 N. W. 896, we said: "It was held in Biart v. Myers, 3 Neb. (Unof.) 196, that, while a superintendent of public instruction acts judicially in forming a new school district from territory embraced within the boundaries of other districts, it does not follow that his findings and orders in the premises must be entered with all the formality of a judgment of a court of law; if the record shows a substantial compliance with the statute it is sufficient. There is no time or place fixed by the statute for the declaration of approval by the county superintendent; it is enough that the approval be made, and it should, of course, be shown in writing within a reasonable time after the declaration is made; but the essential thing is the approval, which is a mental act, and the declaration, either oral or written, which is physical. The mental determination would be insufficient if unaccompanied by any act evidencing that it had been made; but, when made and declared, it becomes effective, notwithstanding the fact that the written evidence was not recorded until later. While the statute in terms does not require the recording of the act, the proper conduct of official affairs requires that such a record be made." See, also, Biart v. Myers, 3 Neb. (Unoff.) 196, 91 N. W. 573; School Dist. No. 49 v. School Dist. No. 65-R., 159 Neb. 262, 66 N. W. 2d 561.

The order of the county superintendent being valid and final, it may not be collaterally attacked as to any matter properly determined by it. Any dissatisfied

person who is aggrieved by the order made may have it reviewed by error proceedings to the district court. But such person may not stand by and permit the order to become final and thereafter attack the order collaterally on grounds that were available in an error proceeding. The bringing of an injunction suit to enjoin the enforcement of the order is a collateral attack upon it and is not available unless the order was wholly void and not merely erroneous. State ex rel. Larson v. Morrison, 155 Neb. 309, 51 N. W. 2d 626; Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692; School Dist. No. 49 v. Kreidler, 165 Neb. 761, 87 N. W. 2d 429.

The finding of the county superintendent is equivalent to a finding that every fact essential to jurisdiction has been found to exist. It includes a determination that 55 percent of all the voters of District 50 had signed the petition. Such order is not therefore subject to collateral attack by injunction on this ground if the petitions are not void on their face.

The record shows that a petition was filed with the county superintendent to which was attached a sworn list of all the voters of District 50. The petition contained the names of persons totalling in excess of the 55 percent of all the voters of District 50. There was some discrepancy in names, but, after notice and hearing, the county superintendent found that 55 percent of the voters of District 50 had signed the petition and made the order granting the petition. This determination is final and not subject to collateral attack.

It is contended that the circulators of the petition misrepresented the facts and fraudulently induced voters to sign the petition. We point out, however, that no evidence was offered in this suit in support of the allegations of fraud contained in the last amended petition. There is therefore no issue of fraud presented by this appeal.

Plaintiffs contend the proceedings and order were void for several reasons. The first contention is that

the language of section 79-402, R. R. S. 1943, requires that the lands detached from one district and annexed to another must be treated as a district and, in the absence of a third petition signed by 55 percent of the voters of such third district, the order purporting to transfer the lands to another district is void. We do not sustain this contention. The pertinent language of section 79-402, R. R. S. 1943, is: "The county superintendent shall * * * change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected." The districts affected are the school districts whose boundaries will be changed. This interpretation of the language "each district affected" appears to have been decided in Cowles v. School District No. 6, 23 Neb. 655, 37 N. W. 493, wherein it is said: "In other words, it is the district in its entirety, before the change of boundary from which the petition is to come, and one-third of the legal voters of which must sign it."

The laws of this state leave the control of the boundaries of school districts with the legal voters of each district. After the original organization of a school district no new district can be formed, old one altered, or the boundaries changed unless such action is initiated by the required percentage of voters in the school districts involved. School Dist. No. 49 v. Kreidler, *supra*. While it is true in the instant case that none of the voters in District 50, who lived on the lands being transferred to the Bridgeport district, signed the petition, the control of the boundaries of District 50 is left with the required majority of all the voters of that school district. No petition is required from the voters in the area or territory being transferred.

Plaintiffs allege that the petition is fatally defective in that it fails to specify the disposition to be made of the assets and unbonded indebtedness of District 50. In this respect, section 79-402, R. R. S. 1943, provides in part: "When a district is divided by petitions, said peti-

tions shall specify the disposition to be made of assets and unbonded indebtedness of the districts; Provided, the remaining portion of an original district divided through annexation shall retain the identity, assets, and unbonded obligations of the original district." It appears clear to us that the present case is within the proviso of the quoted portion of the statute. As a matter of law, District 50 retains its identity, and the assets and un-bonded obligations of such district. It being fixed by law, it would be a vain thing to require a statement of the division of assets and unbonded obligations in the petition when no division thereof is permitted. For us to hold that such a statement is necessary to avoid a holding of invalidity would be to invalidate the petition for not stating a provision of law which everyone is pre-sumed to know. We hold that a petition initiated under section 79-402, R. R. S. 1943, for detaching lands from one district and annexing them to another does not re-quire a provision specifying the disposition of assets and unbonded indebtedness since such disposition is made by law.

It is asserted that the transfer of lands from District 50 to the Bridgeport district would result in funds raised by taxation on land in one district being distributed and used in another district, and is therefore unconstitu-tional. It is fundamental, of course, that tax funds raised in one district for school purposes may not be used in another district. Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. But that is not the situation here.

The fixing of boundaries of school districts is a legis-lative function. The Legislature may, in the exercise of its control over school district boundaries, provide a method for changing such boundaries, and the method provided may properly authorize such change to be in-itiated by petition of the required percentage of the voters of the district. Such a method must, however, provide a means for determining whether the proposed change in boundaries is for a public purpose, and a means

by which an aggrieved property owner, whose property is injuriously affected, may have his rights judicially determined. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566. In the instant case the Legislature has provided a method for transferring lands from one school district to another. It has provided for notice and hearing before the county superintendent, which hearing is judicial in character, and which may be reviewed by error proceedings to the district court. This constitutes due process of law. The fact that lands being transferred from one school district to another may thereby be subjected to a higher rate of taxation poses no question of unconstitutionality since the transfer has been made by a means consistent with due process. Nor does the fact that the school district from which the lands were detached retains tax funds, previously levied and collected, affect the validity of the transfer. A voter or taxpayer of a school district has no interest in the tax funds of a district other than to see that they are used for the public purpose for which they were levied. The provision that tax funds previously levied and collected shall remain the property of the district remaining after the proper transfer of a part of its lands to another school district is clearly within the province of the Legislature. State ex rel. School Dist. v. Ellis, 160 Neb. 400, 70 N. W. 2d 320; City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771.

It is contended that the proceedings are void in that the state committee on reorganization did not have its report before the county committee on reorganization at the time it held its hearing on the proposal to transfer the lands in question. Such report was filed with the county superintendent when the hearing was held to determine the sufficiency of the petitions. We point out that the consideration of the proposal to transfer lands by the state and county committees is advisory only. Such committees have no part in determining whether or not the transfer shall be made other than to make

recommendations thereon. The failure of the state committee to make its recommendations prior to the time the county committee met is an irregularity only where it is shown that such report was on file with the county superintendent at the hearing at which the transfer was approved. This is an irregularity that could have been raised by an error proceeding, and which affords no basis for a collateral attack.

Complaint is made also that the petition of the members of the Bridgeport district was not filed until March 31, 1958. This was a date prior to the hearing before the county superintendent. The record shows that the proposed transfer to the Bridgeport district was accepted by its school board on February 13, 1958, but that the formal petition was not filed until March 31, 1958. This is also an irregularity that may not be collaterally attacked.

It is next contended that the notice of hearing given by the county superintendent was insufficient and voids the proceedings in that personal service was not had upon the plaintiffs, pursuant to sections 25-520.01 to 25-520.04, R. S. Supp., 1957. The applicable portion of section 25-520.01, R. S. Supp., 1957, provides: "In any action or proceeding of any kind or nature * * * where a notice by publication is given as authorized by law, a party instituting or maintaining the action or proceeding with respect to notice or his attorney shall within five days after the first publication of notice send by United States mail a copy of such published notice to each and every party appearing to have a direct legal interest in such action or proceeding whose name and post-office address are known to him." Are the plaintiffs persons having a direct legal interest within the meaning of this statute? We think not. We point out that plaintiffs, as the owners of land being transferred to another school district, do not have a direct legal interest in the fixing of school district boundaries. As to that matter, 55 percent of the voters of District 50 have

the authority to change the boundaries of the district, irrespective of the views of the minority. Even though a minority voter may have the right to test the regularity of the proceedings by review in the district court and to attack such proceedings collaterally if they be entirely void, such voter cannot be said to have the direct legal interest contemplated by the cited sections of the statute. It is a right that is common to every voter and taxpayer in the district to see that the proceedings are in conformity with the statute. In section 25-520.02, R. S. Supp., 1957, the Legislature defined the action or proceeding to which section 25-520.01, R. S. Supp., 1957, applied. It is there said: "The term action or proceeding means all actions and proceedings in any court and any action or proceeding before the governing bodies of municipal corporations, public corporations, and political subdivisions for the equalization of special assessments or assessing the cost of any public improvement." The implications of this section are that matters of general concern to all taxpayers, such as the levy and assessment of property for general tax purposes, are not within the purview of this section. The statute means that it has application to matters of a direct interest to a taxpayer which is not common to all other taxpayers, and to the equalization of special assessments and the assessing of the cost of any public improvement. The statute does not contemplate that personal notice must be given to a class, such as voters or taxpayers in a political subdivision, on matters of general public concern, unless the member or members of the class are personally affected by the proceeding in a manner different from all the voters or taxpayers of the political subdivision, except as specifically provided by the statute. The changing of school district boundaries is a matter of policy which is purely legislative in character. It does not involve matters of direct legal interest to the individual voters or taxpayers of a school district. We conclude that the voters or taxpayers of

a school district do not have such a direct legal interest in the transfer of lands from one district to another as to require personal notice to each under the provisions of sections 25-520.01 to 25-520.04, R. S. Supp., 1957.

Other matters are raised which, in view of our holdings herein, we do not deem necessary to decide.

The record discloses that there was no genuine issue of fact to be determined and that the case was a proper one to be resolved by motion for a summary judgment. The plaintiffs and the appealing defendants each moved for summary judgment. On the basis of the holdings herein made, the trial court erred in sustaining the motion of the plaintiffs for summary judgment and in denying that of the appealing defendants. The judgment of the district court is reversed and the cause remanded to the district court with directions to overrule the motion of plaintiffs for summary judgment and to sustain the motion of the appealing defendants for such a judgment. The costs of this appeal are taxed to the plaintiffs.

REVERSED AND REMANDED WITH DIRECTIONS.