WELLS C. JONES, APPELLANT, v. VILLAGE OF FARNAM ET AL., APPELLEES.

119 N. W. 2d 157

Filed January 25, 1963. No. 35344.

Wells C. Jones, pro se.

Schroeder & Schroeder, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

Wells C. Jones, the plaintiff, brought this action to enjoin the Village of Farnam and its board of trustees, defendants, from proceeding with the construction of a sanitary sewerage system in the village of Farnam under a resolution of necessity and a resolution ordering construction, for a judgment declaring the resolution of necessity and the resolution ordering construction null and void, and for a permanent injunction against the Village of Farnam and its board of trustees enjoining said defendants permanently from proceeding with the project under the above-designated resolutions.

For convenience we will refer to the parties as they are designated in the district court.

The trial court denied the plaintiff's application for a temporary injunction against the defendants.

The defendants demurred generally to the petition and to the plaintiff's amended petition. The plaintiff desired not to plead further. The trial court dismissed the plaintiff's amended petition. The plaintiff perfected appeal to this court.

The plaintiff's amended petition, insofar as need be considered in this appeal, alleged in substance as follows: That the Village of Farnam is a municipality in-

corporated under the laws of the State of Nebraska, with a population of 260 people; that the plaintiff is the owner of certain real estate which is described in the petition; and that the plaintiff brought this action on his own behalf and on behalf of all other owners of real estate located in the Village of Farnam, hereinafter referred to as the village, either resident or nonresident thereof, similarly situated. The petition then set forth the names of the duly elected, qualified, and acting members of the board of trustees of the village, hereinafter referred to as the board. The amended petition further alleged that on March 21, 1962, the board, at a special meeting, introduced and placed on file a resolution of necessity, wherein the board declared it advisable and necessary to build a sanitary sewer system in the village, to be financed by general obligation bonds of the village, together with assessments against abutting property according to the benefits to be derived; that thereafter under dates of March 29, 1962, and April 5, 1962, the board caused to be published in the Farnam, Nebraska, Press, a weekly newspaper published in the village, a legal notice setting forth the provisions of the resolution of necessity and stating that the resolution of necessity would be considered for passage by the chairman and the board at a meeting to be held at the community hall in the village on April 13, 1962, at which time and place the chairman and the board would hear objections as to the passage of the resolution of necessity and the making of the proposed improvement; that no personal notices of the meeting were ever served on any owners of real property located in the village by the board or its attorneys; that no copies of the published legal notice were ever sent by or through the United States mail to any owners of real property located in the village, including the plaintiff, by the board or its attorneys, nor was any affidavit of the mailing of such published notice ever made by the board or by its attorneys as required by

sections 25-520.01 to 25-520.03, R. S. Supp., 1961; that notwithstanding the failure of the board and of its attorneys to give personal notices to any owners of the real estate in the village, and the failure of the board and its attorneys to comply, or attempt to comply, with the provisions of the statutes above cited, the board did, on April 13, 1962, hold a meeting in the community hall in the village and did consider the passage of the resolution of necessity and the making of the improvement, and thereafter on April 13, 1962, did pass a resolution of necessity and a resolution ordering construction; that the passage of the resolution of necessity and the resolution ordering construction by the board, without first having given personal notice to the plaintiff and other owners of real estate located in the village, resident or nonresident, who were similarly situated, violated Article XIV, section 1, Amendment to the Constitution of the United States, and the provisions of Article I, section 3, of the Constitution of the State of Nebraska (known as the due process clause in both Constitutions) and rendered the resolution of necessity and the resolution ordering construction null and void; and that the passage of the resolution of necessity without compliance, or without attempted compliance by the board or its attorneys, with the provisions of the above-cited sections of the statutes, rendered the resolution of necessity null and void. The plaintiff's amended petition then set forth certain facts relating to irreparable damage that would result to the plaintiff and owners of real estate in the village unless the defendants were restrained from proceeding with the construction of the sewer system under the provisions of the resolution of necessity and the resolution ordering construction, and alleged that the plaintiff and others similarly situated had no adequate remedy at law.

An exhibit attached to the petition consists of the legal notice to the effect that at a special meeting of the chairman and the board held on March 21, 1962,

there was introduced and placed on file the resolution of necessity which is set forth, which resolution would be considered for passage by the chairman and the board at a meeting to be held at the community hall in the village on April 13, 1962, at 8 p.m., at which time and place the chairman and members of the board would hear objections as to the passage of the resolution and to the making of the proposed improvement; that thereafter the resolution might be amended and passed, or passed as proposed; and that any petition opposing the resolution of necessity should be filed with the clerk of the village within 3 days before the date of the meeting for the hearing of the proposed resolution of necessity.  Then follows the resolution of necessity.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." Elliott v. City of Auburn, 172 Neb. 1, 108 N. W. 2d 328.  See, also, Gerard v. Steinbock, 169 Neb. 828, 101 N. W. 2d 194.

In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof.  See, Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150; Elliott v. City of Auburn, *supra.*

The plaintiff assigns as error that the trial court erred in sustaining the general demurrer of the defendants to the amended petition of the plaintiff, and in dismissing the plaintiff's amended petition.

Section 6 of the resolution of necessity set forth in the legal notice reads in part as follows:  "To pay the cost of improvements herein provided for, the Chairman and Board of Trustees will, after such improvements have been completed and accepted by the Village, cause to be issued the negotiable bonds of the Village to be called 'Sewer Bonds'.  The main and lateral sewers, to the extent that they specially serve and specially benefit the abutting property, are declared to be local improvements and the cost thereof, to the extent of the

special benefits accruing to the abutting property from the construction of said sewers, shall be assessed on such abutting property as provided by law."

Section 17-913, R. R. S. 1943, provides in part: "Whenever * * * the board of trustees of any village, shall deem it advisable or necessary to build, * * * a sanitary sewer system * * * it shall declare the advisability and necessity therefor in a proposed resolution, * * *. The proposed resolution shall state the amount of such estimated cost. The * * * board of trustees shall have power to assess, to the extent of special benefits, the cost of such portions of said improvements as are local improvements, upon properties found especially benefited thereby; and the resolution, hereinabove mentioned, shall state the outer boundaries of the district or districts in which it is proposed to make special assessments."

In the instant case the engineers' estimate of the cost of such improvement was $74,000.

The legal notice described the outer boundaries of the district in which it was proposed to make special assessments.

Section 17-914, R. R. S. 1943, provides in part: "Notice of the time when any such resolution shall be set for consideration before the * * * board shall be given by at least two publications in a newspaper of general circulation published in the * * * village, which publication shall contain the entire wording of the resolution. The last publication shall be not less than five days nor more than two weeks prior to the time set for hearing of objections to the passage of any such resolution, at which hearing the owners of the property which might become subject to assessment for the contemplated improvement may appear and make objections to the proposed improvement. Thereupon the resolution may be amended and passed or passed as proposed."

Section 17-916, R. R. S. 1943, provides: "If a peti-

tion, opposing the resolution, signed by property owners representing a majority of the front footage which may become subject to assessment for the cost in any proposed lateral sewer district, be filed with the clerk within three days before the date of the meeting for the hearing on such resolution, such resolution shall not be passed."

The foregoing sections, as will be obvious, are applicable to the creation of a sanitary sewer district as applied to the village in question, and the published legal notice heretofore mentioned discloses that the board of the village complied with said provisions of the statutes.

The cardinal provisions of the statutes relied upon by the plaintiff are as follows.

Section 25-520.01, R. S. Supp., 1961, provides in part: "In any action or proceeding of any kind or nature, as defined in section 25-520.02, where a notice by publication is given as authorized by law, a party instituting or maintaining the action or proceeding with respect to notice or his attorney shall within five days after the first publication of notice send by United States mail a copy of such published notice to each and every party appearing to have a direct legal interest in such action or proceeding whose name and post-office address are known to him. Proof by affidavit of the mailing of such notice shall be made by the party or his attorney and shall be filed with the officer with whom filings are required to be made in such action or proceeding within ten days after mailing of such notice. Such affidavit of mailing of notice shall further be required to state that such party and his attorney, after diligent investigation and inquiry, were unable to ascertain and do not know the post-office address of any other party appearing to have a direct legal interest in such action or proceeding other than those to whom notice has been mailed in writing."

Section 25-520.02, R. S. Supp., 1961, provides in part: "The term action or proceeding means all actions and

proceedings in any court and any action or proceeding before the governing bodies of municipal corporations, * * * and political subdivisions for the equalization of special assessments or assessing the cost of any public improvement."

Section 25-520.03, R. S. Supp., 1961, provides: "Sections 25-520.01 to 25-520.03 are intended by the Legislature to be cumulative and supplemental to existing legislation. They are deemed to be a matter of general statewide concern. Such sections applies to all parties authorized by law to give notice by publication, including the State of Nebraska, its governmental subdivisions, and all public and municipal corporations."

Article XIV, section 1, Amendment to the Constitution of the United States, provides in part: "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *."

Article I, section 3, of the Constitution of the State of Nebraska, provides: "No person shall be deprived of life, liberty, or property, without due process of law."

It is the contention of the plaintiff that the foregoing provisions of the statutes must be complied with, otherwise any action taken by the board to pass resolutions as hereinbefore set forth is illegal and void.

The case of Salsbury v. City of Lincoln, 117 Neb. 465, 220 N. W. 827, was a suit in equity to restrain the city of Lincoln and its city commissioners from entering into a contract for the paving of streets. A general demurrer was interposed to the petition, and the demurrer was sustained. The judgment of the trial court was affirmed. This court said: "It is a well-established doctrine that courts will not inquire into or endeavor to control the legislative discretion of city councils in establishing the boundaries of paving districts, nor will they inquire into the motives of legislative bodies, when acting within legal and constitutional limits, nor determine matters concerning the expediency or necessity for such legislation. The acts of legislative bodies,

whether state or municipal, if performed within the prescribed limits, are not subject to revision or control by the courts on the ground of inexpediency, injustice or impropriety. Such are purely functions of legislative power. Neither will the courts take cognizance over matters involving the wisdom or necessity for the enactment of legislation. The legislative body may alone determine whether a certain piece of legislation is needed or advisable for the general government of the people from whom its power emanates. The concern of the courts is as to the limits of the power, and not the manner or method by which the power is sought to be exercised, if kept within the prescribed limits. Therefore, judicial inquiry is strictly one of power, and not of expediency. To do otherwise would amount to an unwarranted encroachment by the judicial branch of the government upon the powers of the legislative branch and thus tend to destroy the necessary coordination existing between these two separate branches. The principle was adopted by this court in Omaha & C. B. Street R. Co. v. City of Omaha, 114 Neb. 483 (208 N. W. 123); Enders v. Friday, 78 Neb. 510 (111 N. W. 140); Village of Bellevue v. Bellevue Imp. Co., 65 Neb. 52 (90 N. W. 1002). This court in the quite recent case of Whitla v. Connor, 114 Neb. 526 (208 N. W. 670), adopted this general principle, wherein it held: 'The action of the village board in ordering sidewalk placed, and providing that cost thereof shall be assessed upon the abutting lot, is a legislative determination that the improvement is expedient and proper, and that such property will be benefited by reason thereof, and such determination cannot be denied its effect in a judicial proceeding, in a case where it was within the board's power to so act. And one challenging its authority carries the burden of alleging and proving the invalidating facts.' In the event that the proposed improvement would not benefit plaintiff's property or become an injury thereto, these are matters that can be properly

considered by the assessing board in levying special assessments, and the plaintiffs have an adequate remedy at law by which to determine the justice of such assessments."

In the instant case the defendants complied with the requirements of section 17-914, R. R. S. 1943. Ample opportunity is given by section 17-916, R. R. S. 1943, to make objections to the creation of a sanitary sewer system by the municipal authorities. No petitions protesting the resolution filed with the village clerk were made. The plaintiff failed to file a petition or to object at the public hearing held on this matter, as provided for in the legal notice heretofore set forth.

The following authorities are also applicable to this appeal.

In Elliott v. City of Auburn, *supra,* this court said: "As stated in Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397: 'In Utley v. St. Petersburg, 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155, it was said: "There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land * * * or in proceedings for collection afterwards.'

"In Hoopes v. City of Omaha, 99 Neb. 460, 156 N. W. 1047, the court, quoting from Londoner v. City and County of Denver, 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103, said: ' "In the exercise of this authority the city council, in the ordinance directing the improvement to be made, adjudged, in effect, that a proper petition had been filed. (In the instant case the city council so adjudged as a question of fact.) * * * The only question for this court is whether the charter provision authorizing such a finding, without notice to the landowners, denies to them due process of law. We think it does not. The proceedings, from the beginning up to and including the passage of the ordinance authoriz-

ing the work did not include any assessment, or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done without hearing to the landowners, provided a hearing upon the assessment itself is afforded." ' "

In Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67, the plaintiffs sought to enjoin the defendants, City of Neligh, a municipal corporation of the second class, the mayor thereof, and four individuals allegedly purporting to be members of the city council, from entering into contracts for street improvements, issuing bonds, and levying special assessments to pay therefor under an alleged null and void ordinance. The trial court sustained the motion to dismiss the plaintiffs' action for want of any lawful right and sufficient evidence to entitle plaintiffs to injunctive relief as prayed. The judgment of the trial court was affirmed. This court said: "As stated in Field v. Barber Asphalt Co., 194 U. S. 618, 24 S. Ct. 784, 48 L. Ed. 1142, '* * * It is not the purpose of the Fourteenth Amendment, as has been frequently held, to prevent the State from classifying the subjects of legislation and making different regulations as to the property of different individuals differently situated. The provision of the Federal Constitution is satisfied if all persons similarly situated are treated alike in privileges conferred or liabilities imposed.' * * * It is now elementary in this jurisdiction as well as elsewhere that an opportunity to be heard with right of review upon the question of assessments for benefits is all that is required to satisfy the due process provisions of the consitutions."

The case of Lindgren v. School Dist. of Bridgeport, 170 Neb. 279, 102 N. W. 2d 599, was a suit by a landowner and his wife to enjoin the defendants from giving effect to an order of the county superintendent of schools detaching certain lands of plaintiffs from School District No. 50 and annexing such lands to the School

District of the city of Bridgeport. The district court held the proceedings to be void. The School District of the city of Bridgeport and the members of the board of education appealed. This court said: "It is next contended that the notice of hearing given by the county superintendent was insufficient and voids the proceedings in that personal service was not had upon the plaintiffs, pursuant to sections 25-520.01 to 25-520.04, R. S. Supp., 1957." These are the same as the sections above set out. The court held that the plaintiffs did not have a direct legal interest within the meaning of section 25-520.01, R. S. Supp., 1957; and that the plaintiffs, as the owners of land being transferred to another school district, did not have a direct legal interest in the fixing of school district boundaries. The court said: "Even though a minority voter may have the right to test the regularity of the proceedings by review in the district court and to attack such proceedings collaterally if they be entirely void, such voter cannot be said to have the direct legal interest contemplated by the cited sections of the statute. * * * The implications of this section (25-520.02, R. S. Supp., 1957) are that matters of general concern to all taxpayers, such as the levy and assessment of property for general tax purposes, are not within the purview of this section. The statute means that it has application to matters of a direct interest to a taxpayer which is not common to all other taxpayers, and to the equalization of special assessments and the assessing of the cost of any public improvement. The statute does not contemplate that personal notice must be given to a class, such as voters or taxpayers in a political subdivision, on matters of general public concern, unless the member or members of the class are personally affected by the proceeding in a manner different from all the voters or taxpayers of the political subdivision, except as specifically provided by the statute. The changing of school district boundaries is a matter of policy which is purely legislative in character.

It does not involve matters of direct legal interest to the individual voters or taxpayers of a school district. We conclude that the voters or taxpayers of a school district do not have such a direct legal interest in the transfer of lands from one district to another as to require personal notice to each under the provisions of sections 25-520.01 to 25-520.04, R. S. Supp., 1957."

The plaintiff's real estate may be subject to assessment. This fact cannot be determined until a hearing is had on benefits, equalization, and assessment, after which time the plaintiff will know whether or not his real estate will be subject to the payment of special taxes.

It appears that the plaintiff would not have a direct legal interest in the resolution of necessity, considering the rule announced in the above-cited case.

As to whether or not the Farnam Press of Farnam, Nebraska, the newspaper in which the notice of hearing was published, is a legal newspaper or a newspaper of general circulation in Farnam, Nebraska, the plaintiff failed to raise any such question in his petition or amended petition. The following rule is applicable.

"An issue not presented in the trial court may not be raised for the first time in the Supreme Court." Freeman v. City of Neligh, *supra.*

We conclude that the board was not required by law to mail copies of the published legal notice of a public hearing on a proposed resolution of necessity for the creation of a sanitary sewer project to every party whose property might eventually become subject to assessment; that it is not the prerogative of courts to review or inquire into legislative acts of municipal boards concerning matters within their power, as to whether such municipal boards acted expediently, wisely, or necessarily; and that the plaintiff had an adequate remedy at law as indicated by the above-cited authorities.

In the light of the authorities heretofore set forth, and for the reasons given in this opinion, we conclude

that the trial court did not commit prejudicial error as contended for by the plaintiff. The judgment of the trial court is affirmed.

AFFIRMED.