HOWARD KOOL CHEVROLET, INC., A NEBRASKA CORPORATION, APPELLANT, V. DENNIS BLOMSTEDT AND FRANCES BLOMSTEDT, HUSBAND AND WIFE, APPELLEES.

511 N.W.2d 222

Filed January 25, 1994.   No. A-93-551.

Maurice A. Green, of Burger, Bennett & Green, P.C., for appellant.

Judith L. Owens for appellees.

Sievers, Chief Judge, and Hannon and Miller-Lerman, Judges.

Miller-Lerman, Judge.

Howard Kool Chevrolet, Inc. (Kool), appeals the order of the district court for Red Willow County granting the motion

for summary judgment filed by Dennis and Frances Blomstedt, appellees, and dismissing Kool's petition. In its petition, Kool sought a deficiency judgment against the Blomstedts after Kool repossessed and resold a secured automobile at an alleged loss. The trial court concluded that Kool's failure to give the Blomstedts notice of the sale barred any recovery. For the reasons recited below, we reverse the judgment and remand the cause for further proceedings.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Dowis v. Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992). Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993); *Hanson v. General Motors Corp.*, 241 Neb. 81, 486 N.W.2d 223 (1992); *Antelope Cty. Farmers Coop. v. Citizens State Bank*, 240 Neb. 760, 484 N.W.2d 822 (1992); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991); *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991).

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993); *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992); *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989).

## FACTS

On January 31, 1987, the Blomstedts purchased a used 1986 Chevrolet Caprice station wagon and executed and delivered to Kool and its assignor, General Motors Acceptance Corporation

(GMAC), a written contract agreeing to pay the principal sum of $13,220.59 with initial interest at the rate of 12.5 percent per annum. The automobile was refinanced through GMAC on February 28, 1990, in the principal sum of $7,547.64 with interest at the rate of 13.25 percent per annum. The Blomstedts granted a security interest in the vehicle to GMAC pursuant to the financing agreements, and GMAC subsequently assigned its security interest to Kool. The parties agree that the certificate of title shows a first lien in favor of GMAC.

The Blomstedts made the required payments until May 21, 1990, when they surrendered the vehicle to Kool. Kool had the vehicle in its possession from May 21, 1990, until Kool sold it on July 14, 1992. Kool admitted in its response to the Blomstedts' request for admissions that the Blomstedts were not notified prior to the sale and that the "only communication concerning the sale of said automobile set [sic] or delivered to Defendants, and each of them, by Plaintiff, is a Certified letter to each Defendant, undated, indicating that Plaintiff had sold the automobile for $4,500.00, seeking the balance due of [$]3,336.04." A copy of the envelope for this letter bears a stamped legend, "1st Notice," followed by a handwritten entry, "08-20-92."

Kool filed a petition on February 16, 1993, seeking a deficiency judgment of $4,373.76, representing the principal amount of $3,336.04 plus $1.21 in interest per day, and any interest accruing to the date of judgment. Although the Blomstedts in their answer denied "each and every allegation contained in plaintiff's petitioner [sic]," the facts as recited above were subsequently admitted. The Blomstedts further answered that the "vehicle in question had a fair market value sufficient to cover the the [sic] debt remaining on the secured property on the date plaintiff took control thereof" and that

> plaintiff failed in all respects to comply with the requirements of Nebraska law contained in the Uniform Commercial Code pertaining to repossession and resale of secured property to wit: petitioner specifically failed to send notice or provide any notice pursuant to section 2-706 (3) RRS, Ne, (1992), thereby depriving defendants of their statutory right to appear and bid or buy at said sale.

The Blomstedts moved for summary judgment. A telephonic hearing was held on June 9, 1993. The affidavits of counsel for all parties, with answers to requests for admissions attached, were received in evidence. The affidavit of the Blomstedts' counsel stated that there were no material facts in dispute and that the facts admitted by Kool would constitute a complete defense to the petition based on failure to provide notice under Neb. U.C.C. §§ 2-703 and 2-706 (Reissue 1992). The competing affidavit prepared by Kool's counsel claimed that there remained material facts in dispute, inter alia, surrounding the reasonableness of the sale of the vehicle, that the transaction was covered by Neb. U.C.C. art. 9 (Reissue 1992 & Supp. 1993), and that compliance with the notice requirement of § 9-504(3) was not a condition precedent to the right of a secured party to recover a deficiency. The trial court took the matter under advisement.

On June 17, 1993, the trial court granted the Blomstedts' motion for summary judgment. The trial court made the following findings and order:

1. The cause of action in this case accrued on or about May 21, 1990, when the Plaintiff took possession of the vehicle which is the subject of this action and paid G.M.A.C.

2. Although the vehicle giving rise to this law suit was not sold until July 14, 1992, the law in effect at the time the cause of action accrued required notice of the public or private sale of the collateral as a condition precedent to an attempt to collect a deficiency judgment.

3. Section 9-504 U.C.C., Neb., was not amended until March 30, 1991, long after the cause of action in this case accrued.

4. No notice of any sale was given to the Defendants of any kind.

5. There is no genuine issue of a material fact and the Defendants are entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that Summary Judgment is found in favor of the Defendants and against the Plaintiff herein; the petition of the Plaintiff, filed herein, should be and

hereby is dismissed, and costs are taxed to the Plaintiff. The Court does not award and does not order any attorneys [sic] fees to be paid.

## ANALYSIS

Kool claims on appeal that the trial court erred when it found that this cause accrued on or about May 21, 1990, when Kool repossessed the vehicle and further erred when it concluded that the notice-of-sale requirements of § 9-504 (Reissue 1980) which were then in effect were applicable to this case. Kool argues that § 9-504 (Reissue 1992), as revised effective March 30, 1991, applies to the sale of the vehicle on July 14, 1992, and controls the availability of deficiency relief pursuant to the petition filed February 16, 1993. We agree with Kool that § 9-504 (Reissue 1992) as revised effective March 30, 1991, applies to this case.

Prior to March 1991, § 9-504(1) and (3) (Reissue 1980) provided generally that after default, a secured party may sell the collateral by public or private commercially reasonable sale and that reasonable notice of the sale was to be sent by the secured party to the debtor. The drafters of article 9 of the Uniform Commercial Code did not consider whether a creditor failing to give adequate notice should be barred from recovery in a deficiency action. 2 James J. White & Robert S. Summers, Uniform Commercial Code § 27-19 (3d ed. 1988). This gap was historically filled by Nebraska case law.

In a series of cases, the Nebraska Supreme Court clarified and augmented the statutory provisions and otherwise gave direction to holders of security interests on the requirements of proper notice. The Nebraska Supreme Court held in *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974), that the failure to give requisite notice under § 9-504(3) (Reissue 1971) was an absolute bar to recovery. In 1976, the Nebraska Supreme Court held that a guarantor was also a debtor entitled to notice within the meaning of § 9-504(3) (Reissue 1971) and that a creditor who failed to give reasonable notification of sale to the guarantor was barred from recovering a deficiency judgment against the guarantor. *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). In 1980, the Nebraska Supreme Court considered the issue of

notice to an unconditional guarantor. In *First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980), the defendant signed an unconditional guaranty of payment for loans made to the principal debtor. The bank later secured some of the principal debtor's loans with collateral. The principal debtor defaulted, and the bank failed to notify the defendant guarantor of a sale of the collateral created by the subsequent security agreement. The Nebraska Supreme Court held that where no security was taken or contemplated at the time the guaranty was created, the failure to give notice to the guarantor was not a defense to an action upon the agreement.

In 1983, the Nebraska Supreme Court held that where the notice to the guarantor failed to apprise the guarantor that he or she might be personally liable for a deficiency following a contemplated sale by virtue of his or her status as personal guarantor of a corporate guarantor's agreement, such notice was ambiguous and failed to comply with § 9-504(3) (Reissue 1980), and this failure to provide proper notice served as a bar against an action for a deficiency judgment. *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983). In 1987, the Nebraska Supreme Court held that a notice to guarantors which failed to refer to the security agreement from which their liability for a potential deficiency derived was inadequate notice and barred an action for a deficiency judgment. *Deutsche Credit Corp. v. Hi-Bo Farms, Inc.*, 224 Neb. 463, 398 N.W.2d 693 (1987). In 1988, the Nebraska Supreme Court held that notice under § 9-504(3)(Reissue 1980) required that the secured party-creditor notify the guarantor not only of the sale of the collateral, but also that he or she could be liable for any deficiency arising after the sale. *General Electric Credit Corp. v. Lewis*, 230 Neb. 429, 432 N.W.2d 27 (1988). In 1989, in *American Honda Finance Corp. v. Bennett*, 232 Neb. 21, 439 N.W.2d 459 (1989), the Nebraska Supreme Court, after finding a split of authority on the issue of notice in California case law, interpreted the California Commercial Code notice requirements to be the same as Nebraska's and held that the notice given to guarantors must refer to the agreement by which the guarantors could be liable and advise the guarantors that they may be held liable for any deficiency

resulting from a sale.

In 1991, the Legislature passed 1991 Neb. Laws, L.B. 221, which amended § 9-504 (Reissue 1980). The language of § 9-504 (Reissue 1992) after amendment reads in pertinent part as follows:

> (1) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Article on Sales (Article 2). . . .
>
> . . . .
>
> (3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable. Unless collateral is perishable, threatens to decline speedily in value, or is of a type customarily sold on a recognized market, reasonable notification of any public or private sale or other intended disposition is to be provided by the secured party to the debtor, in the manner set forth in subsection (6) of this section if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his or her notification to the debtor or before the debtor's renunciation of his or her rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale, and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, the secured party may buy at private sale.
>
> . . . .
>
> (6) The notification required in subsection (3) of this section shall be sent to the debtor by the secured party and need only contain (a) notice of the time and place of any

public sale or notice of the time after which any private sale or other intended disposition is to be made and (b) a statement to the effect that the debtor may be liable for any deficiency existing after sale or disposition of collateral. It shall not be necessary for the notification to refer to any guarantee agreement, to identify or designate the capacity in which a debtor is being sent such notification, or to identify or designate the capacity in which the debtor may be liable for any deficiency existing after sale or disposition of collateral.

(7) Compliance with subsection (3) of this section shall not be a condition precedent to the right of a secured party to recover any deficiency, but losses, if any, sustained by the debtor as a result of failure by the secured party to comply with such subsection may be recovered in accordance with section 9-507.

(8) For purposes of this section, debtor shall include a guarantor unless no security for the indebtedness was taken or contemplated at the time the guarantee of payment was made.

Section 9-502(2) reads as follows:

(2) A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner and may deduct his reasonable expenses of realization from the collections. If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

By virtue of an emergency clause, revised § 9-504 became effective on March 30, 1991. See Floor Debate, L.B. 221, Committee on Banking, Commerce and Insurance, 92d Leg., 1st Sess. 2268 (Mar. 26, 1991).

A reading of revised § 9-504(3) makes clear that

"reasonable notification of any public or private sale or other intended disposition is to be provided by the secured party to the debtor, in the manner set forth in subsection (6) of this section . . . ." Subsection (6) describes the contents of a proper notice. Subsection (6) also identifies information which need not be included in a notice. The language of § 9-504(7) plainly states that

[c]ompliance with subsection (3) . . . shall not be a condition precedent to the right of a secured party to recover any deficiency, but losses, if any, sustained by the debtor as a result of failure by the secured party to comply with such subsection may be recovered in accordance with section 9-507.

Subsection (7) superseded the case law which had held that inadequate notice was a bar to a deficiency recovery.

■ When an appellate court is asked to interpret a statute, it must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). We find that the plain meaning of revised § 9-504 requires that notice as specified be given prior to a sale, but that failure to give notice does not preclude an action for a deficiency judgment.

A review of the legislative history confirms this interpretation. Senator David Landis, principal introducer, stated that "LB 221 will provide greater certainty to both secured creditors and debtors attempting to comply with the U.C.C. Section 9-504(3) notice requirements and will provide a greater degree of fairness in commercial transactions by eliminating the punitive 'bar to deficiency judgment' rule." Statement of Intent, L.B. 221, Committee on Banking, Commerce and Insurance, 92d Leg., 1st Sess. (Feb. 12, 1991). The statement further advises that under L.B. 221 "the consequences of such a failure [to give notice] would no longer prohibit the creditor from recovering a deficiency judgment, but would limit the debtors [sic] damages to those provided under U.C.C. Section 9-507." Statement of Intent, *supra*. Finally, the introducer's Statement of Intent contains comments that L.B. 221 was

intended to "put a halt to the constantly changing notice requirements created by the Nebraska Supreme Court." As noted above, the Legislature left no doubt that revised § 9-504 was intended to be effective immediately and passed L.B. 221 with an emergency clause. See 1991 Neb. Laws, L.B. 221, § 3.

Notwithstanding the plain language of § 9-504 as revised, and the corresponding legislative history, counsel and the trial court in the instant case analyzed the applicability of revised § 9-504 as an "accrual" issue. The trial court concluded that the action "accrued" when Kool repossessed the vehicle on May 21, 1990, at a time when case law barred a deficiency action where notice was absent or inadequate. We believe that the plain language of revised § 9-504 makes clear that its provisions "shall be in full force and take effect, from and after its passage and approval, according to law." 1991 Neb. Laws, L.B. 221, § 3. L.B. 221 was approved by the Governor on March 29, 1991, and by its terms applied to notices and resales thereafter. The resale in this case occurred more than 1 year after passage of revised § 9-504.

It is well settled that the Legislature is free to create and abolish rights so long as no vested right is disturbed. *Spilker v. City of Lincoln*, 238 Neb. 188, 469 N.W.2d 546 (1991); *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976). It is equally clear that "[n]o one has a vested interest in any rule of the common law or a vested right in any particular remedy." *Peterson v. Cisper*, 231 Neb. 450, 457, 436 N.W.2d 533, 537 (1989). It has been held, for example, that there is no vested right in statutory licenses or permits, and the amendment or repeal of laws governing legislatively controlled trades does not give rise to a claim for compensation. *Tom & Jerry, Inc. v. Nebraska Liquor Control Commission*, 183 Neb. 410, 160 N.W.2d 232 (1968).

Observing that a person has no vested right in any rule of common law, the Nebraska Supreme Court quoted the U.S. Supreme Court from *Munn v. Illinois*, 94 U.S. 113, 24 L. Ed. 77 (1876), and stated:

"A person has no property, no vested interest, in any rule of the common law. . . . [T]he law itself, as a rule of conduct, may be changed at the will, or even at the whim,

504

of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."
*Prendergast v. Nelson*, 199 Neb. 97, 106, 256 N.W.2d 657, 664-65 (1977).

Illustrating the foregoing principles, the Nebraska Supreme Court has specifically held that a litigant has no vested right in a rule of evidence, *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974), or in a statute of limitations in force when a cause of action accrues, *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984). The Nebraska Supreme Court has further held that no vested rights are impaired when a constitutional amendment accelerates the date stockholder liability is due in a bank insolvency action because the amendment affects only a method of procedure, not a substantive right. *Department of Banking v. Hedges*, 136 Neb. 382, 286 N.W. 277 (1939).

With respect to the issue of whether changes in the law apply to pending actions, it has been held that a litigant has no vested right in a mode of procedure. *Lindgren v. School Dist. of Bridgeport*, 170 Neb. 279, 102 N.W.2d 599 (1960). In *Lindgren*, a law changing the procedure for obtaining a bill of exceptions, enacted while the action was pending, applied to the pending action. We find the case of *White Motor Co. v. Reynolds*, 179 Neb. 91, 136 N.W.2d 437 (1965), particularly instructive. *White Motor Co.* was an action in replevin to recover the possession of two mortgaged trucks. The defendant answered that the indebtedness was void and uncollectible because the contract was made pursuant to the Installment Sales Act. The Installment Sales Act had been declared unconstitutional and in violation of the Installment Loan Act prior to the filing of the case. The defendant claimed penalties pursuant to the Installment Loan Act. During the pendency of the action, the Installment Loan Act was amended, and the penalties for a violation were changed. The defendant argued that the parties' rights had vested when the action was commenced and that he should be entitled to the original penalties. The Nebraska Supreme Court held that the parties'

rights did not become vested when the action was commenced and that the new law applied to pending causes of action and defenses. Thus, a litigant has no vested right in a penalty in effect at the commencement of a cause.

In the case at bar, we note that the rule stating that a creditor cannot recover a deficiency without proper notice springs from case law. Furthermore, we find that the Blomstedts do not have any vested right in this common-law rule. After reading cases outside of Nebraska and reviewing the commentators, the court notes that the consequences of such common-law rules on the market have been vigorously disputed. One treatise observes:

> The consequences of abolition of deficiencies [caused by failure to give notice] are now much disputed. Some argue that such denial will cut the bottom stratum of debtors out of the legitimate credit market entirely and will restrict the amount of credit available to others. Others dispute the predictions about the market impact. It seems probable that the abolition of deficiencies, particularly in the automobile market, would tend to restrict the availability of credit, and it is for the legislatures to balance that presumably negative market impact against the positive factor of eliminating an opportunity for abuse of the debtor by commercially unreasonable resales.

2 James J. White & Robert S. Summers, Uniform Commercial Code § 27-19 at 632 (3d ed. 1988). It was wholly within the Legislature's power to address this controversy within Nebraska and to supersede the common law by passing the 1991 revisions to § 9-504.

Based on the foregoing, we conclude as a matter of law that § 9-504, as revised in 1991, applies to this case and that the Blomstedts did not have a vested right in the application of the previous version of § 9-504 to the sale of the vehicle in 1992. We therefore find that the trial court's ruling that the cause accrued in 1990 and that Kool's failure to give notice barred a deficiency judgment was error. Pursuant to § 9-504(7), losses, if any, sustained by the Blomstedts as the result of Kool's alleged failure to comply with § 9-504(3) may be recovered in accordance with § 9-507. The record in the case shows that

material facts are in dispute regarding the reasonableness of Kool's sale which are to be resolved upon remand.

### CONCLUSION

For the foregoing reasons, the trial court's order granting the Blomstedts' motion for summary judgment and dismissing Kool's petition is reversed, and the cause is remanded for treatment consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.