# UNITED STATES FIDELITY AND GUARANTY COMPANY *v.* HAMILTON AND SPIEGEL, INC.

[No. 86, September Term, 1965.]

*Decided January 7, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*J. Hodge Smith* for the appellant.

*Karl G. Feissner* for the appellee.

HORNEY, J., delivered the opinion of the Court.

The appeal in this case is a sequel to the case of *Hamilton & Spiegel, Inc. v. Board of Education of Montgomery County,* 233 Md. 196, 195 A. 2d 710 (1963). In both cases, the subcontractor (Hamilton & Spiegel, Inc.) sought to recover from the board of education as well as the prime contractor (Technical Engineers and Contractors, Inc.) and the bonding company (United States Fidelity and Guaranty Company) the unpaid balance due by the prime contractor to the subcontractor for work done and materials furnished in connection with the construction of additional classrooms to the Bethesda Elementary School. In the first case, where the counts in the declaration claiming payment from the prime contractor and the bonding company were not before us, it was held that the subcontractor could not recover from the board of education either on the theory that the subcontractor was a creditor beneficiary of the prime contractor or on the theory that the board had been unjustly enriched at the expense of the subcontractor. In the instant case, in which the subcontractor sued the bonding company on the payment bond required by Code (1964 Replacement Volume 8A), Art. 90, § 11, as well as the prime contractor and the board of education, judgment was entered in favor of the subcontractor against the prime contractor and the bonding company and the latter appealed.

Chronologically, the record shows that the board of education took actual possession of the additional classrooms on August 26, 1961; that the board accepted the project "contingent upon the completion of certain contractual items" by formal resolution on September 25, 1961; that suit was filed in this case on March 29, 1963; that the final certificate of the architect was issued on November 22, 1963; and that final payment under

the construction contract was made (to the bonding company) on June 15, 1964, after the prime contractor had furnished the board of education with a release of the liens of all subcontractors. The record, in addition to showing that no work was done by the prime contractor after the acceptance of the classrooms by the board of education, also shows that although the architect was required to make a final inspection after completion of the work and, upon finding such work acceptable, to issue a final certificate to that effect, he, for reasons which are not explained in the record, failed to issue the final certificate until after the expiration of more than two years following acceptance of the project by the board of education.

At the close of the subcontractor's case, the bonding company moved for a directed verdict on the ground that the suit was barred by limitations because it was not brought within one year from the dates on which the board of education took possession of or formally resolved to accept the classrooms. Although the record is silent as to whether there was a formal ruling on the motion, the lower court did, in effect, deny it by subsequently instructing the jury that the "suit against the bonding company was timely filed." At the close of the whole case, the request of the bonding company for an instruction which would have allowed the jury to determine the applicability of limitations, by finding the date on which the board of education finally accepted the classrooms, was also denied. These rulings had the effect of holding that the question of limitations was a matter of law for the court to decide. We think the rulings, under the facts of this case, were correct.

Since subsection (d) of § 11 of Art. 90, relating to where and when suits on performance and payment bonds should be brought, provides in pertinent part that "no such suit shall be commenced after the term of one year after the date of final acceptance of the work performed under the contract," the question to be decided is on what date was the work contracted for *finally accepted* under the terms and conditions of the construction contract. In this case, where the date of final acceptance was fixed by the terms of the contract, it is a question as to which there can be no substantial doubt.

As we see it the period of limitations began to run, not when

the board of education took possession of the classrooms or conditionally accepted the project, but when the architect issued the final certificate that the work contracted for had been satisfactorily completed. This was not done until more than six months after suit had been filed. Furthermore, the delay of the architect has no bearing on the right of the subcontractor to recover from the bonding company for the balance due him by the prime contractor. If the bonding company was concerned and in doubt as to when limitations began to run it could have removed the uncertainty by obtaining a declaration of its rights and legal status under the construction contract. See Code (1957), Art. 31A, §§ 1,2,3.

The decision of this Court in *Baltimore County Department of Education v. Henry A. Knott, Inc.*, 234 Md. 417, 199 A. 2d 369 (1964), is controlling here. There, where it was said that a "final acceptance" to start the running of limitations must be unqualified, unconditional and for a complete performance of the contract, it was held "that the 'final acceptance of the work performed under the contract' within the meaning of § 11[(d) of Art. 90] did not occur prior to * * * the date of the architect's certificate." We see no distinction between that case and this. For other cases to the same or similar effect, see *Yale & Towne Mfg. Co. v. Aetna Cas. & Surety Co.*, 166 Atl. 473 (N. J. L. 1933); *Farnsworth & Co. v. Elec. Sup. Co.*, 113 F. 2d 111 (C. A. 5 1940); *Nesbitt v. Massachusetts Bond. & Ins. Co.*, 49 N. E. 2d 765 (Ct. Apls. Ohio 1942); and *Williamsport Plan. Mill Co. v. Maryland Cas. Co.*, 29 A. 2d 731 (N. J. L. 1943), all of which were either quoted or discussed by Prescott, J. (now C.J.), in the *Knott* case.

*Judgment affirmed; the appellant to pay the costs.*