ANTELOPE COUNTY FARMERS COOPERATIVE ASSOCIATION, DOING BUSINESS AS UNION OIL COMPANY, APPELLANT, V. CITIZENS STATE BANK OF CLEARWATER, A NEBRASKA BANKING CORPORATION, APPELLEE.

484 N.W.2d 822

Filed May 29, 1992.    No. S-89-803.

Rodney W. Smith for appellant.

Richard L. Spittler for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff, Antelope County Farmers Cooperative Association (Co-op), appeals the order of the district court for Antelope County sustaining the motion for summary judgment filed by defendant, Citizens State Bank of Clearwater (Bank), and dismissing Co-op's petition. Co-op's petition, filed December 23, 1988, alleged that Co-op had a first, valid, and perfected lien on the crops of Jack Jones and the proceeds therefrom and that in derogation of that status, the Bank converted proceeds of Jones' corn crop to the Bank's favor.

The Bank filed an answer which denied the priority of Co-op's lien and the allegations of conversion. The answer further alleged that Jones and his wife had filed bankruptcy, that the bankruptcy plan had been confirmed, that the plan provided for distribution of the corn crop check to the Bank,

and that all creditors of the Joneses were bound to the terms of the bankruptcy plan.

The trial court found that the respective security interests of the parties had been determined by the bankruptcy court and that the determination was res judicata and would not be relitigated. The court sustained the Bank's motion for summary judgment and dismissed Co-op's petition, with prejudice and at Co-op's costs.

Co-op timely appealed. Co-op assigns three errors in this court. The assigned errors may be consolidated into one, alleging that the trial court erred in determining that the interest and priority of liens of the two parties had been "adjudicated in the United States Bankruptcy Court . . . and [were] therefore res judicata and could not be relitigated."

The record shows the following relevant facts: Co-op alleged that between 1982 and 1986, it provided agricultural supplies and products to Jack Jones, a farmer in Clearwater, Nebraska, and that Jones has at all relevant times been indebted to Co-op for $65,000. In consideration of Co-op's extension of credit, Jones granted a security interest in his crops and the proceeds therefrom. A security agreement was executed, filed, and perfected.

On January 6, 1987, Jones and his wife, Neta Jones, filed a voluntary petition in bankruptcy, pursuant to 11 U.S.C. ch. 12 (1988), "Adjustment of Debts of a Family Farmer with Regular Annual Income." On June 10, 1987, the debtors filed their amended chapter 12 plan, which provided for four categories of creditors.

The only creditor in "Class (a)" was Antelope County, to which the debtors owed taxes. "Class (b)" creditors were those with security interests in the Joneses' "farmstead" and were listed as the Federal Land Bank and the Bank. "Class (c)" creditors were those creditors secured by interests in farm equipment and crops and were listed as the Co-op, with a security interest of $65,110.64, and the Bank, with a security interest of $178,500. In addition, the Bank had a lien on the Joneses' motor vehicles. Finally, "Class (d)" creditors were those creditors who were not secured by any interest in the debtors' property. This class listed eight creditors. Among them

were the Bank (unsecured for the amount of $109,888, representing "excess debt over value of collateral") and Co-op (unsecured for the entire amount owed by the debtors to Co-op, for the reason that there was "no equity for security interests to attach.")

The plan provided that as to claims in "Class (c)," the debtors would retain the motor vehicles and pay off the debt owed on them. The plan then stated: "Debtors propose to surrender the remaining motor vehicles, farm equipment, 1986 corn crop of approximately 7,000 bushels and the Cargill bean check in the amount of $862.56 to the Citizens State Bank within ten days of confirmation of this Plan."

"Class (d)" creditors were to "be paid all of Debtors' disposable income for a period of three years, in the sum of $0.00 per year."

On July 27, 1987, the U.S. Bankruptcy Court for the District of Nebraska held a confirmation hearing on the debtors' amended plan. The hearing was attended by the debtors' attorney and the trustee. The plan was confirmed.

In July 1987, the 1986 corn crop was sold for $8,990 to Foxley Cattle Company. The check, made out to Co-op, the Bank, and the debtors, was turned over to the Bank according to the terms of the plan, but when the Bank asked Co-op to endorse the check, Co-op refused. On September 4, 1987, the Bank filed an application for contempt, praying that the bankruptcy court find Co-op in contempt and compel it to endorse the check.

In October 1987, the parties filed a stipulation that Co-op would endorse the check, while "not waiving any rights or causes of action that it may have [in] regard to said moneys." In exchange, the Bank agreed to withdraw its application for contempt. Co-op then brought this conversion action in the Antelope County District Court.

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. *Flamme v. Wolf Ins. Agency*, 239

Neb. 465, 476 N.W.2d 802 (1991); *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

Co-op contends that summary judgment was improper because there are genuine issues of fact which have not been determined, specifically priority and interest in the check for the corn crop.

Because we are concerned with former property of a debtor in bankruptcy, it is first necessary for this court to determine if it has jurisdiction. It has been stated:

> Although bankruptcy courts by statute may hear "any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11," 28 U.S.C. § 157(a) (1988), they may not entertain cases involving noncore, unrelated matters.

*In re Gallucci*, 931 F.2d 738, 741 (11th Cir. 1991).

Title 28 U.S.C. § 157(b)(2)(K) (1988) provides that "[c]ore proceedings include . . . determinations of the validity, extent, or priority of liens." We are concerned in this case with the determination of the validity and priority of two conflicting liens, but § 157(b)(2)(K) is not dispositive of the issue. The bankruptcy courts and federal courts have interpreted this statute " 'as empowering [bankruptcy courts] *only* to make "determinations of the validity, extent, or priority of liens" *upon property of the estate.*' " (Emphasis in original.) *In re McKinney*, 45 B.R. 790 (Bankr. W.D. Ky. 1985).

Numerous bankruptcy cases have defined "core" and "related" proceedings. In *McKinney*, the U.S. Bankruptcy Court for the Western District of Kentucky stated:

> It should go without saying that mere possession by the trustee of a disputed asset cannot confer jurisdiction if it is otherwise without a statutory basis.
>
> . . . .
>
> ". . . [W]e hold that a bankruptcy court lacks the jurisdiction to either hear or decide private lien priority

disputes between two creditors which do not directly or indirectly affect the debtor or his property."
*McKinney*, 45 B.R. at 792 (cited with approval in *In re Gallucci, supra*).

In *Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987), the court held that a dispute between two creditors to property formerly belonging to the debtor, but which had been abandoned by the bankruptcy trustee, was not a "core" proceeding over which the bankruptcy court had jurisdiction. In *In re Alexander*, 49 B.R. 733 (Bankr. D.N.D. 1985), the bankruptcy court determined that an action seeking determination of competing priorities of creditors' heirs was not a "core" proceeding. In *Matter of Climate Control Engineers, Inc.*, 51 B.R. 359 (Bankr. M.D. Fla. 1985), the bankruptcy court determined that one count of a debtor's complaint seeking determination of the validity, extent, or priority of creditors' heirs was not a "core" or a "related" proceeding.

Similarly, in *Matter of Phillips House Associates, Inc.*, 64 B.R. 912 (Bankr. W.D. Mo. 1986), the court held that proceedings to determine the priority of liens between two creditors as to property of the debtor did not involve property of the estate and thus were not "core" proceedings. The court noted that determination of the dispute would not add to or subtract from the property of the estate because neither lien was challenged and because the hypothetical status of the bankruptcy trustee was inferior to the status of both creditors.

The *Phillips* court held, however, that because the liens related to property which would not be marketable until a determination of priority was made and because sale of the property was necessary for the debtor to successfully complete his repayment plan, proper administration of the estate would be *impossible* without adjudication of the dispute within the bankruptcy court. Thus, the *Phillips* court felt compelled to find jurisdiction and to determine the status of the liens, "under the rubric of 'necessity' or 'impossibility of administration.' " *Id.* at 916. That situation does not exist in this case.

In the present case, both Co-op and the Bank are statutory lienholders with claims perfected prior to the debtors' filing

bankruptcy. According to the provisions of the Bankruptcy Code, upon filing of the petition in bankruptcy, the bankruptcy trustee occupies the status of a judgment lien creditor. 11 U.S.C. § 544 (1988). The bankruptcy trustee has an interest in property only if the debtor has equity in that property or if the debtor had a claim equal or superior to a judgment creditor in that property.

Any transaction in which a person or entity disposes of or parts with property or an interest in property is deemed a "transfer" by the Bankruptcy Code. 11 U.S.C. § 101(50) (1988). The powers of the trustee to avoid a transfer are detailed in 11 U.S.C. §§ 545-49 (1988). Thus, unless modified by action within the bankruptcy court, a creditor's status is not altered by the filing of a bankruptcy petition, and that creditor's rights relative to other creditors and the debtor remain the same.

The claim of a judgment lien creditor is inferior to that of a previously perfected statutory lien creditor. Neb. U.C.C. § 9-301 (Cum. Supp. 1988). Both Co-op and the Bank are perfected secured creditors for an amount which exceeds the value of the property. The debtors had no equity in the crop. Therefore, the bankruptcy trustee had no interest in the proceeds of the corn crop, and the property which is the subject of this appeal is not property of the estate.

The determination of the dispute in this case will not add to or detract from the Joneses' bankruptcy estate, and the hypothetical status of the trustee would be inferior to the claim of either Co-op or the Bank. The party that prevails in this dispute will be entitled to sole possession of the entire amount, and in spite of the Bank's contention, the debtors' surrender of the property to the Bank is not necessary "in order to complete the terms and conditions of said confirmed Plan." Therefore, jurisdiction of this matter was properly with the district court for Antelope County.

The Co-op contends that since the debtors provided in their plan that the Co-op was secured by an interest in the crops, no proof of claim needed to be filed as to their claim and that, therefore, Co-op has an allowed secured claim as shown in the debtor's plan.

Upon filing a petition in bankruptcy, a debtor must also file,

among other things, a list of all creditors and a schedule of assets and liabilities. 11 U.S.C. § 521 (1988). The local bankruptcy rule provides:

> In a Chapter 12 proceeding, a creditor may file a proof of claim within thirty (30) days following the date the schedules are filed. . . . Except for cause shown and under circumstances which are just and equitable, claims not filed within the time limit shall be allowed or disallowed as shown on the debtor's schedules filed . . . . Claims shall be allowed or disallowed as filed unless an objection is filed within the time limit.

Nebraska Court Rules and Procedure, State and Federal 1992 rule 12-4 at 1140 (West 1991).

The amended plan did list both the Bank and Co-op as secured creditors with an interest in, among other things, the crops and the proceeds therefrom. There is no dispute as to either the amount or the existence of either claim. Rule 12-4 provides that both claims were allowed.

The Co-op also contends that once allowed, a secured claim may be disallowed only according to the procedure in 11 U.S.C. § 502 (1988), which procedure requires an objection, notice, and a hearing upon such objection. A claim may be disallowed only if it is a statutory exception to allowance listed in § 502. Co-op contends that because there was no attempt by the debtors, the trustee, or any other creditor to have the lien disallowed and because Co-op's lien does not fit an exception within § 502, its lien passed through the bankruptcy. Our examination of § 502 shows to our satisfaction that Co-op's lien is not one listed in the § 502 exceptions.

The Bank has not referred to any bankruptcy proceeding which disallowed the claim of Co-op, but cites instead to the confirmation hearing itself as adjudication of priority. Based on the confirmation of the plan without objection, the Bank contends that the issue is res judicata.

The Bank's response is based on the argument that pursuant to 11 U.S.C. § 1227 (1988), the present action is res judicata because "[c]onfirmation of a plan binds both the debtors and its creditors to the provisions of the plan." Brief for appellee at 5. The Bank concludes that Co-op is seeking to "readjudicate

the priority of claims provided by a Chapter 12 plan confirmed by the Bankruptcy Court." Brief for appellee at 8.

Addressing this issue, Co-op contends that "[s]ince the bankruptcy court was without jurisdiction to decide the lien priority question, the doctrine of res judicata can not apply." Brief for appellant at 21.

In *Kerndt v. Ronan*, 236 Neb. 26, 29, 458 N.W.2d 466, 469 (1990), this court held:

> The doctrine of res judicata dictates that any right, fact, or matter which has been expressly or directly adjudicated on the merits in a previous action before a court acting *within its jurisdiction*, or which was necessarily included in the determination of the previous action, is conclusively settled by the judgment in the previous action and may not be relitigated by the parties to the previous action, whether the claim, demand, purpose, or subject matter in subsequent litigation would or would not be the same as that in the previous litigation.

(Emphasis supplied.) See, also, *Western Sec. Bank v. Terry A. Lambert Plumbing, ante* p. 448, 482 N.W.2d 278 (1992).

Chapter 12 has its own provision regarding the binding effect of confirmation of the plan, which reads nearly the same as the chapter 13 provision, with minor differences which are not relevant to our discussion. Section 1227(a) provides:

> [T]he provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.

Thus, the Bank contends that even if Co-op had a superior lien, the bankruptcy judge decided the validity and the priority of liens on the questioned property in favor of the Bank by confirming the plan and that by its failure to appeal in federal court, Co-op is bound by that plan. While we agree with the Bank that a confirmed plan binds all creditors and the debtor, we disagree as to the application of that principle to the present

case.

The U.S. Court of Appeals for the Fifth Circuit considered in *In re Simmons*, 765 F.2d 547 (1985), whether a statutory lien survived a bankruptcy proceeding. In *Simmons*, the debtor filed a petition and plan which listed as unsecured a debt owed to one creditor. The creditor objected and filed a proof of claim which asserted that the creditor was secured by a statutory lien on real property. When the debtor sought to sell the questioned property after confirmation of the plan (which still listed the creditor as unsecured), the creditor asserted his security interest and sought relief from the automatic stay to enforce his lien. An adversary action was instituted by the debtor, seeking cancellation of the creditor's lien. The debtor argued that the creditor, by failing to object to his status as unsecured when the plan was confirmed, accepted this classification.

The bankruptcy court refused to cancel the lien and, further, held that the lien, which was perfected before the debtor filed for bankruptcy, was valid and enforceable, could not be avoided, and was entitled to full satisfaction. In addition, the bankruptcy court held that the creditor had not waived his rights by failing to object at the confirmation hearing to his continued status as an unsecured creditor. The debtor appealed to the U.S. District Court for the Southern District of Mississippi.

The district court affirmed the bankruptcy court's holding that the lien survived the confirmation, but reversed the bankruptcy court's holding that the lien was enforceable. This reversal was based on Mississippi law which required that judgment had to be entered on the lien before it could be enforced. That had not been done.

On appeal to the court of appeals, the debtor asserted that when the plan was confirmed, it bound all creditors to its terms and thereby lifted the lien from the property and vested title to the property, free and clear, in the debtor. Also, the debtor argued that because the creditor's claim was allowed as unsecured in the plan as confirmed, the debt was effectively avoided pursuant to 11 U.S.C. § 506(d) (Supp. II 1978).

In analyzing the status of the parties, the court of appeals stated: "It is clear under the [Bankruptcy] Code that any

statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code." *Simmons*, 765 F.2d at 556.

The court of appeals determined that the debtor had not brought an action to avoid the lien, pursuant to § 545, and that therefore the lien came within the provisions of § 506(d) of the Bankruptcy Code. Section 506(d) " 'permits liens to pass through the bankruptcy case unaffected' " if no action is brought by the trustee to avoid the lien. *Simmons*, 765 F.2d at 557. The court reasoned that because the creditor's claim was deemed allowed and because no action was brought to avoid the lien under § 502(d), the lien had not been avoided. See, also, *Estate of Lellock v. Prudential Ins. Co. of America*, 811 F.2d 186 (3d Cir. 1987); *Matter of Tarnow*, 749 F.2d 464 (7th Cir. 1984).

The case *Matter of Beard*, 112 B.R. 951 (Bankr. N.D. Ind. 1990), explains that the confirmation hearing is not an adequate forum to determine priority of the liens, so as to bar an affected party from litigation in state court. *Beard* considered whether a tax lien was destroyed by the confirmation of a chapter 13 plan. The court cited 11 U.S.C. § 1327 (1988), which is essentially identical to § 1227, and then drew a distinction between "what a plan may and may not accomplish when it designates the treatment of secured claims." *Beard*, 112 B.R. at 954.

The *Beard* bankruptcy court began with the premise set out in *Simmons*, prohibiting elimination of a lien "simply by failing or refusing to acknowledge it or by calling the creditor unsecured." *Id*. The court then examined the "two different types of proceedings for resolving disputes before the bankruptcy court—adversary proceedings and contested matters." *Beard*, 112 B.R. at 954-55.

The court stated:

> Of the two, adversary proceedings are the more formal. They are initiated by a summons and complaint, to which the defendant is expected to respond. For contested matters, relief is generally sought through a motion and a response is not necessary unless the court requires one. If an adversary proceeding is required to resolve the disputed

rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed. [Citation omitted.]

The distinction between adversary proceedings and contested matters becomes especially significant where secured claims are concerned.

*Beard*, 112 B.R. at 955.

The bankruptcy court noted that cases concerning the validity, priority, or extent of a lien require an adversary proceeding because the very existence of the lien is questioned. The court stated, "Thus, if a secured claim is challenged due to questions concerning . . . its priority (the lien's relationship to other claims to or interests in the collateral) . . . an adversary proceeding is required." *Beard*, 112 B.R. at 955.

The *Beard* court held that the confirmation process is not, in itself, an adversary proceeding. The court stated:

Since [confirmation] is at best a contested matter, the only questions which are properly before the court in the context of confirmation are those which can be raised as contested matters. Only as to issues of this kind will confirmation operate as res judicata. . . .

. . . A challenge which questions the validity or existence of a lien, its extent or the scope of the property encompassed by it, or the lien's priority in relation to other interests, however, requires an adversary proceeding. Disputes of this nature are not resolved by the confirmation process. Therefore, when a plan is confirmed without objection, although the value of an acknowledged lien securing a claim will be binding upon a creditor, a secured creditor is not bound by the terms of the confirmed plan with respect to limitations upon the scope or validity of the lien securing its claim.

*Beard*, 112 B.R. at 955-56.

We agree fully with the reasoning of both *Simmons* and *Beard*. The plan filed by the debtor in this case classified Co-op as a secured creditor with interest in the corn crop. The plan's listing of Co-op and the Bank as "unsecured" was based on lack of sufficient value in the secured property to satisfy their interests. Section 506 of the Bankruptcy Code provides that an

allowed claim of a creditor which is secured by a lien on property of the estate is secured to the extent of the value of the property and that to the extent that the value of the lien exceeds the value of the property, the creditor is unsecured.

Both Co-op and the Bank have a claim to the check in its entire amount. The extent of either party's unsecured status depends upon a determination within the context of an adversary proceeding as to the priorities of the two liens according to state law.

It is evident that no adversary proceeding was brought to determine the priority of either of the competing liens and that neither lien was avoided in the bankruptcy court. The provision of the bankruptcy plan which listed the Bank as the receiver of the crop check could not be substituted for the process provided for by the Bankruptcy Code.

We determine that bankruptcy law does not permit an allowed secured claim protected by the Bankruptcy Code and this state's statutes to be avoided merely by confirmation of a plan in bankruptcy without an adversary proceeding to protect the rights of creditors. We therefore hold that confirmation of a plan will bind creditors and the debtor to the terms of that plan, but " 'unless the underlying claim has been disallowed the lien securing the claim is not extinguished by bankruptcy.' " *Matter of Riley*, 88 B.R. 906, 911 (Bankr. W.D. Wis. 1987) (quoting *Matter of Spohn*, 61 B.R. 264 (Bankr. W.D. Wis. 1986)).

According to the order of confirmation and the plan upon which it was based, both the Bank and Co-op had an interest in the check. Each interest exceeded the value of the check, and, according to 11 U.S.C. § 1225(a)(5)(C), "the debtor surrenders the property [the grain check] securing such claim to such holder."

The order of confirmation does not make an allocation of the check, but indicates only that it was to be surrendered. The decision of the debtors to relinquish the check to the Bank is in no way based in bankruptcy law and may be ignored. Claim to the check must be decided by Nebraska law between the two creditors, and the debtors could no more determine who should take the check than could they arbitrarily determine which lien was superior.

Because no evidence was adduced at trial as to the priority of the competing liens, we are unable to rule on this matter. We find that it was improper for the trial court to find that the issue before it, namely the priority of the competing liens, was res judicata. The bankruptcy court had not determined this issue, nor did it have jurisdiction to do so. A fact question exists as to the relative priority of the liens of the Bank and Co-op. The court erred in granting the Bank's motion for summary judgment. We therefore reverse the order of the district court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.