BALDWIN CARPET LINOLEUM & CARPET, INC., APPELLEE, V. BUILDERS, INC., AND ST. PAUL FIRE & MARINE INSURANCE CO., DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLANTS, AND BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, THIRD-PARTY DEFENDANT, APPELLEE.

523 N.W.2d 33

Filed October 4, 1994.   No. A-93-085.

Larry V. Albers, of Erickson & Sederstrom, P.C., for appellants.

Andrew D. Strotman, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Board of Regents.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MILLER-LERMAN, Judge.

Builders, Inc., and St. Paul Fire & Marine Insurance Co. (collectively referred to as Builders) appeal the decision of the district court for Lancaster County which found that Builders' third-party petition against the Board of Regents of the University of Nebraska (University) was time barred, and granted summary judgment in favor of the University. For the reasons recited below, we affirm.

## SCOPE OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994); *Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 512 N.W.2d 358 (1994); *Dowis v. Continental Elev. Co.*, 241 Neb.

207, 486 N.W.2d 916 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992). Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Anderson v. Nashua Corp., supra*; *Hillie v. Mutual of Omaha Ins. Co., supra*; *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993); *Hanson v. General Motors Corp.*, 241 Neb. 81, 486 N.W.2d 223 (1992); *Antelope Cty. Farmers Coop. v. Citizens State Bank*, 240 Neb. 760, 484 N.W.2d 822 (1992); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991); *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991).

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Spittler v. Nicola, supra*; *Flamme v. Wolf Ins. Agency, supra.*

## FACTS

This litigation arises from the construction project to build the Lied Center for Performing Arts (Lied Center) on the campus of the University of Nebraska at Lincoln. Builders, defendant and third-party plaintiff in this action, entered into a contract with the University to act as the general contractor for the construction of the Lied Center. Builders subcontracted with plaintiff, Baldwin Carpet Linoleum & Carpet, Inc. (Baldwin), to purchase and install the carpet in the Lied Center.

In March 1987, Builders informed the University that Baldwin anticipated the price of the carpet would, in the near future, rise above the price specified in the contract and that the University needed to select the colors for the carpet by April 3 to

avoid incurring such a price increase. The University responded that any delay in selecting the carpet colors was due to the fact that the brick suppliers had not yet provided color samples to the University for comparison. The University also indicated that it expected Builders and Baldwin to supply the carpet at no additional cost. The University notified Builders of its initial carpet color selections in a letter dated April 21, 1987, after Builders extended the color selection deadline to April 22.

The University made its final selections in regard to carpet color, style, and pattern in June 1988, whereupon Baldwin learned that the initial supplier had gone out of business and that the selected carpet would cost $19,680 over and above the original bid price. Consequently, in mid-July 1988, Builders submitted two claims to the University for additional costs. By letter dated August 3, 1988, the University denied Builders' claims for additional moneys, asserting that Builders and Baldwin remained responsible for any increase in the price of the carpet. Notwithstanding the denial of the claims, the University indicated it was willing to negotiate regarding alternative solutions through August 8.

On September 30, 1988, pursuant to a series of negotiations, the University agreed to pay the additional installation costs that would be incurred because the carpet from the new supplier required a double-glue carpet pad. However, the University refused to pay for any increase in the price of the carpet. The record shows that the University paid $112,500, the full original contract price for the cost of the carpet, when it arrived at a bonded warehouse in Lincoln.

On November 15, 1989, the project architect issued a certificate of substantial completion for the Lied Center. The parties agree that Baldwin completed the installation of the carpet prior to the issuance of the certificate of substantial completion on November 15.

After substantial completion, Builders requested that the University pay Baldwin an additional $27,543 due to the increase in the cost of the carpet. The University offered Baldwin $10,824 in settlement of this claim. Baldwin rejected this settlement offer and countered with an offer of $19,000. On or about September 26, 1990, in connection with Baldwin's

counteroffer, the University requested additional information and documentation to substantiate the additional charges. On October 5, the University denied Baldwin's modified claim for $19,000, in a letter styled "Final Response."

Baldwin filed the present action in Lancaster County District Court against Builders on November 21, 1991. On November 25, Builders submitted its claim in connection with the carpet dispute to the Office of Risk Management, pursuant to the State Contract Claims Act, Neb. Rev. Stat. § 81-8,302 et seq. (Cum. Supp. 1992). On December 11, 1991, Builders objected to the submission of the claim to the State Claims Board and expressed its desire to pursue action in district court. Builders filed a third-party petition against the University in the district court for Lancaster County on June 12, 1992.

On November 4, 1992, the University moved for summary judgment against Builders. The district court for Lancaster County sustained the University's motion for summary judgment on December 21. The trial court found that Builders had failed to file its claim with the Office of Risk Management within the 2-year statute of limitations set forth in the State Contract Claims Act at § 81-8,306. Builders appeals.

## ANALYSIS

Prior to full briefing of this case, the University moved to dismiss this appeal for lack of a final, appealable order as required by Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992). The University argued that the pendency of the main action between Baldwin and Builders precluded appellate review. This court denied the motion. Under Nebraska practice, the granting of a motion for summary judgment in favor of a third-party defendant has been treated as an appealable order. See, *Zwingman v. Kallhoff*, 244 Neb. 514, 507 N.W.2d 894 (1993); *Gables CVF v. Bahr, Vermeer & Haecker Architect*, 244 Neb. 346, 506 N.W.2d 706 (1993).

On appeal, Builders asserts that the district court erred in sustaining the University's motion for summary judgment. Builders argues generally that its case against the University was timely because its claim was filed within 2 years of the University's final reply, dated October 5, 1990. The University

responds generally that the third-party petition against it was time barred because Builders' cause of action accrued when the carpet was installed on or before the issuance of the certificate of substantial completion, dated November 15, 1989. The parties agree that the carpet was installed prior to November 15.

The district court granted the University's motion for summary judgment because it found that Builders did not file its claim within the 2-year statute of limitations under § 81-8,306 of the State Contract Claims Act. The State Contract Claims Act governs all contract disputes between the claimant and the State of Nebraska or a Nebraska state agency. § 81-8,303. For these purposes, the term "state agency" includes all departments, agencies, boards, bureaus, and commissions of the State. *Id.* Because the State Contract Claims Act authorizes suits against the State, it is in derogation of the State's sovereignty, and we must strictly construe its provisions in favor of the sovereign. See *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 430 N.W.2d 893 (1988).

Section 81-8,306 of the State Contract Claims Act provides that "every contract claim permitted under the State Contract Claims Act shall be forever barred unless the claim is filed with the Risk Manager within two years of the time at which the claim accrued." Nebraska law is well settled that a claim accrues when an injury occurs and the injured party has the right to seek redress by instituting and maintaining a lawsuit. *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444 (1993). The Nebraska Supreme Court has held that "a cause of action for breach of contract accrues as soon as the breach occurs." *Id.* at 714, 502 N.W.2d at 449. We must determine from the facts of each case the point at which a statute of limitations begins to run. *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988).

This litigation is founded on an alleged breach of contract. The record clearly indicates that a dispute regarding the payment for the increased price of the carpet arose during the summer of 1988. The University rejected claims for the increased cost of purchasing the carpet, a position to which it adhered throughout the dispute and subsequent litigation. On September 30, the University indicated it would pay for the

additional installation costs, but not the increased price of the carpet. After these negotiations, Baldwin completed the carpet installation. The carpet installation was completed before the architect issued a certificate of substantial completion on November 15, 1989.

We have reviewed the record, and even taking the inferences in favor of Builders, we conclude that by the time the carpet was installed and the architect issued the certificate of substantial completion, the parties were aware of enough facts to know whether a case or controversy existed, and whether they were satisfied with the other parties' positions and concessions in regard to their existing disputes. At the time the certificate of substantial completion was issued on November 15, 1989, the carpet was installed and the University had indicated that it would not pay for the increased price of the carpet. Based on the undisputed facts of this case in which the parties agree the carpet installation was completed before the issuance of the certificate of substantial completion, we conclude that the statute of limitations began to run on or before the date the architect issued the certificate of substantial completion on November 15. Accordingly, the submission of Builders' claim to the Office of Risk Management on November 25, 1991, was not timely.

The conclusion that the action between Builders and the University accrued on or before November 15, 1989, is consistent with the facts of this case and with Nebraska jurisprudence on accrual of actions. Although we acknowledge the distinction in the roles among the architect, general contractor, and subcontractor in a construction project, we note that the Nebraska Supreme Court has interpreted the statutory period of repose applicable to architects who have a contractual duty to inspect throughout the duration of the construction project to begin to run when construction is completed. See, *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988); *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987). Research shows that in actions between general contractors and owners in other jurisdictions, measuring the statute of limitations from the point of issuance of a certificate of substantial completion

or earlier has also been endorsed. See, *Grand Island Cent. School v. Transcom Equip.*, 128 Misc. 2d 858, 859-60, 491 N.Y.S.2d 262, 264 (1985) (explaining in an action between a general contractor and owner that "the courts of this state have held that a cause of action for failure to pay the contractor accrues upon substantial completion, or, if earlier, upon representation by the contractor to the architect of substantial completion"); *District School Bd. of Desoto County v. Safeco Ins. Co.*, 434 So. 2d 38, 39 (Fla. App. 1983) (construing Fla. Stat. ch. 255.05(2) (1973) and holding that "a certificate of substantial completion and the acceptance of a constructed building by the owner [start the running of the statute of limitations] for actions against the surety on the bond"). See, also, *Housing Now-Village West v. Cox & Crawley*, 646 S.W.2d 350 (Ky. App. 1982); *U. S. F. & G. v. Hamilton*, 241 Md. 133, 215 A.2d 735 (1966).

We note that Builders argues on appeal that the statute of limitations should begin to run on October 5, 1990, the date the University issued its "Final Response." Builders' contention is based on the fact that Builders submitted claims to the University for additional moneys after the date of substantial completion, and Builders and the University engaged in additional discussions regarding the carpet dispute between the date of substantial completion and October 5, 1990. The existence of continuing negotiations without deceit or other unfulfilled promises does not ordinarily toll a statute of limitations. See *Luther v. Sohl*, 186 Neb. 119, 122, 181 N.W.2d 268, 270 (1970) (holding that although inducement to delay institution of action may initially act to toll the statute of limitations, "after the inducement for delay has ceased to operate [a plaintiff] cannot excuse [its] failure to act within the statutory time on the ground of estoppel"). See, also, *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985) (holding in a construction case based on a contract but presented in tort that the act which provided the basis for the claim occurred when the construction of the building was completed, irrespective of any continuing professional relationship between the parties). Our review of the record does not show any equitable or legal excuse which would justify

tolling the statute of limitations in this case.

We are aware of authority in other jurisdictions in which the statute of limitations was deemed to begin running when an owner refused to pay for extras, which is somewhat consistent with Builders' argument on appeal, but we find the facts too dissimilar to be persuasive. See, e.g., *Hanover Ins Co v Drainage Dist*, 52 Mich. App. 658, 218 N.W.2d 109 (1974) (holding that, in a situation where subsurface conditions were found to differ from those anticipated at the time of the original bid, the statute of limitations began to run on the contractor's claim from the date when the owner denied liability for claimed extras, rather than from the date the contractor notified the owner of the differing conditions or from the date of substantial completion). Furthermore, we note that in *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989), the Nebraska Supreme Court held in a construction case that the statute of limitations began to run when the department ousted the contractor from the construction project, not when the department made final payment to the contractor. Thus, payment or lack of payment is relevant to the issue of damages, rather than to accrual of the cause of action. *Id*.

Because Builders did not submit its claim to the Office of Risk Management until November 25, 1991, more than 2 years after the accrual of its cause of action on or before November 15, 1989, the date upon which the architect issued the certificate of substantial completion following installation of the carpet, we find that Builders' third-party action against the University was time barred. We conclude that the University was entitled to judgment as a matter of law and affirm the order of the district court.

AFFIRMED.